United States District Court
Southern District of Texas
**ENTERED**
February 03, 2021
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ALLEN JAMES GRANGER, (TDCJ–CID #1293857) | § § § § | CIVIL ACTION NO. 4:19-cv-00456 |
| Petitioner, | § § § | |
| vs. | § § | JUDGE CHARLES ESKRIDGE |
| LORIE DAVIS, | § § § | |
| Respondent. | § | |

### MEMORANDUM ON DISMISSAL

The motion to dismiss by Respondent Lorie Davis is granted. Dkt 9. The statute of limitations bars the petition by Petitioner Allen James Granger for a writ of *habeas corpus* under 28 USC § 2254.

1.   Background

A jury in March 2005 found Granger guilty of aggravated robbery with a deadly weapon in Cause Number 1010803 before the 184th Judicial District Court of Harris County, Texas. He was sentenced to life in prison. Dkt 10-22 at 35–36. The First Court of Appeals affirmed his conviction in May 2006. *Granger v State*, 2006 WL 1223516 (Tex App—Houston [1st Dist] 2006, pet refd). The Texas Court of Criminal Appeals refused his petition for discretionary review in September 2006. *In re Granger*, 2006 Tex Crim App LEXIS 1853.

The First Court of Appeals summarized the trial testimony this way:

> At approximately 4:00 p.m. on February 16, 2003, the complainant, Catherine Cisneros, was accosted by appellant as she walked to her apartment from the complex parking lot at

12905 Woodforest in Harris County. The complainant testified that appellant pointed a gun at her face and demanded the keys to her vehicle. The complainant surrendered her keys, and, after a brief struggle, appellant took the complainant's bag. At this point, appellant took possession of the complainant's white Toyota SUV and, upon being warned by an accomplice waiting nearby in a vehicle that the complainant was using her cell phone, sped away.

Ten days after the incident, while on patrol, Constable L. Clark spotted appellant parked in a white Toyota SUV in the parking lot of Cunningham Middle School. Recognizing appellant from their prior relationship and knowing that appellant had no driver's license, Clark approached appellant and asked who owned the car and whether or not appellant had a driver's license. After appellant told Clark that the vehicle belonged to his girlfriend's mother, Clark told him that she would have to come get the car because appellant did not have a license. Clark allowed appellant to leave on foot to find her, but appellant never returned. While appellant was gone, Clark checked the vehicle's plates and learned that the sheriff's department wanted the vehicle for its involvement in a robbery.

Harris County Deputy Sheriff S. Davis found appellant's fingerprint inside the stolen vehicle. When the complainant picked up her vehicle from the sheriff's storage lot, she noticed a gun between the driver's seat and console. Although Davis did not recover any latent fingerprints on the gun, the complainant confirmed at trial, while being cross-examined, that she was sure that the gun found was the gun (Exhibit 6) used in the robbery.

2

J. Dupre, a firearms examiner with the Harris County Sherriff's Department, testified that Exhibit 6 was an "air soft gun," a replica of existing firearms, capable of shooting 6 millimeter plastic BB's. Dupre testified that by the time Exhibit 6 came into the laboratory the gun did not function, but that she could not determine when it had stopped functioning. Dupre identified the pellet found inside the magazine of the gun as potentially capable of being fired from the gun if it was, in fact, functioning at the time of the robbery, although she could not say at what velocity. When asked if a BB shot by an air soft gun was capable of causing serious bodily injury, Dupre testified that was outside the scope of her expertise. Dupre further testified that Exhibit 6 looked similar to a Heckler and Koch nine millimeter pistol, which she conceded was a deadly weapon. The jury also heard testimony from Officer S. McCoy, who testified that a BB gun can cause serious bodily injury.

The trial court granted appellant's motion for an instruction of acquittal as to paragraph one of the indictment, which alleged that appellant had used a firearm in the commission of the robbery. The second count of the indictment included a charge for aggravated robbery with a deadly weapon, namely a BB gun, and the lesser-included offense of robbery. The jury returned a verdict of guilty as to aggravated robbery with a deadly weapon and assessed punishment at life in prison.

*Granger*, 2006 WL 1223516 at *1–2.

Granger didn't file a state application for a writ of *habeas corpus* until May 2017, over ten years later. Dkt 10-20 at 7–30. The state court conducted a hearing in June 2018. See Dkt 10-19 (transcript). It denied relief with findings of fact issued in August

2018. See Dkt 10-22 at 1–7, 10. The Texas Court of Criminal Appeals denied the application in December 2018 without written order on findings of the trial court. Dkt 10-17.

Granger filed his federal petition with the assistance of counsel in February 2019. See Dkt 1. Granger contends that his conviction is void for several reasons. He first asserts that his trial counsel, Alvin Nunnery, was ineffective because he failed to call witness Clarence Craig to testify about the inoperability of the gun used in the crime; refused Granger's request to testify in his own defense; and failed to file a motion to permit Granger to testify free of impeachment with extraneous offenses. He also argues that the State violated his due process rights by presenting insufficient evidence that he used a deadly weapon. He last claims that he is actually innocent of aggravated robbery. See id at 6–16.

2.   Legal standard

The Anti-Terrorism and Effective Death Penalty Act of 1996 imposes a one-year statute of limitations for federal *habeas corpus* petitions. The statute provides in part:

> (1) A 1-year period of limitation shall apply to an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of

4

>        the claim or claims presented could have been
>        discovered through the exercise of due
>        diligence.

28 USC § 2244(d)(1).

Most directly at issue here is § 2244(d)(1)(A), pertaining to limitations running from judgment finality at the conclusion of direct review. The Fifth Circuit explained in *Roberts v Cockrell* that a decision becomes final "by the conclusion of direct review or the expiration of the time for seeking such review." 319 F3d 690, 692 (5th Cir 2003) (quotations and citations omitted). Direct review includes a petition for *certiorari* to the United States Supreme Court, and so direct review concludes when the Supreme Court either rejects the petition or rules on its merits. Ibid (citation omitted). Absent appeal to the state's highest court, judgment becomes final when the time for seeking such review expires. *Gonzalez v Thaler*, 565 US 134, 137 (2012).

### 3. Analysis

#### a. Limitations

The Texas Court of Criminal Appeals refused Granger's petition for discretionary review on September 20, 2006. Granger had ninety days to file a petition for a writ of *certiorari*. Supreme Court Rule 13.1 (West 2002). He didn't do so. His conviction was thus final in December 2006, and the one-year limitations period ended on December 19, 2007. Granger waited until February 10, 2019 before filing his federal petition. It is untimely under § 2244(d)(1)(A).

Granger did file an application for state *habeas corpus* relief in May 2017, which the Texas Court of Criminal Appeals denied without written order on findings of the trial court in December 2018. Dkt 10-17. "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 USC § 2244(d)(2). But the limitations period had already run by then, and so the state application had no tolling effect. See *Scott v Johnson*, 227 F3d 260, 263 (5th Cir 2000).

Granger doesn't allege or demonstrate that alternate

AEDPA triggers set a different end to the limitations period. As to § 2244(d)(1)(B), nothing in the record indicates that any unconstitutional action by the State imposed an impediment to Granger filing an application for federal *habeas corpus* relief before the end of the limitations period. As to § 2244(d)(1)(C), the claims by Granger don't concern a constitutional right recognized by the Supreme Court within the last year and made retroactive to cases on collateral review. And as to § 2244(d)(1)(D), Granger hasn't proven that any factual predicate was unknown or couldn't have been discovered with due diligence prior to the time his conviction became final.

Absent equitable tolling, Granger's petition is more than a decade late.

### b.   Equitable tolling

Equitable tolling preserves claims in situations "'when strict application of the statute of limitations would be inequitable.'" *United States v Patterson*, 211 F3d 927, 930 (5th Cir 2000), quoting *Davis v Johnson*, 158 F3d 806, 810 (5th Cir 1998). The Fifth Circuit holds that cases presenting "rare and exceptional circumstances" can equitably toll the one-year AEDPA statute of limitations. *Jackson v Davis*, 933 F3d 408, 410 (5th Cir 2019) (quotation omitted); see also *Holland v Florida*, 560 US 631, 649 (2010). It applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights. *United States v Wheaten*, 826 F3d 843, 851 (5th Cir 2016) (citations omitted) (discussing equitable tolling in context of § 2255); see also *Melancon v Kaylo*, 259 F3d 401, 408 (5th Cir 2001) (citations omitted).

A petitioner seeking a writ of *habeas corpus* has to prove entitlement to equitable tolling. *Phillips v Donnelly*, 216 F3d 508, 511 (5th Cir 2000, *per curiam*). To do this, he must show diligence in the pursuit of rights and extraordinary circumstances that prevented timely filing. *Manning v Epps*, 688 F3d 177, 183–84 (5th Cir 2012) (citations omitted). The required diligence is that which is reasonable, not that which is maximumly feasible. *Holland*, 560 US at 653 (citations omitted). But the Fifth Circuit has found delays much shorter than those at issue here to

preclude a finding of diligence. See *Palacios v Stephens*, 723 F3d 600, 606, 608 (5th Cir 2013) (citations omitted) (petitioner couldn't show reasonable diligence due to delay of seven months in filing petition); *Koumjian v Thaler*, 484 F Appx 966, 969–70 (5th Cir 2012) (no abuse of discretion in denying equitable tolling due to delay of more than eight months).

Granger fails to show that any extraordinary circumstance prevented him from timely filing his federal petition. The record in no way suggests that the State of Texas misled him or otherwise prevented him from filing within the deadline.

He also fails to establish diligence in the pursuit of his rights. The record instead shows that Granger let nearly ten years pass between the dates when his conviction became final in December 2007 and when he first sought to file a state petition in May 2017. Such delay in filing his state petition counsels against the application of the tolling doctrine. *Ott v Johnson*, 192 F3d 510, 514 (5th Cir 1999).

Granger filed both his state application and this petition with the assistance of counsel. Even if he hadn't, ignorance of the law and lack of legal assistance generally don't excuse late filing. For example, see *Wheaten*, 826 F3d at 853 (citations omitted) (no excuse where failure to file petition within applicable limitations period was attributable solely to mistaken assumption that statute of limitations didn't apply to petition); *Turner v Johnson*, 177 F3d 390, 392 (5th Cir 1999, *per curiam*) (citation omitted) (no excuse where due to unfamiliarity with legal process and lack of representation during applicable filing period). In short, the record doesn't support Granger's entitlement to equitable tolling.

c. Actual innocence

A petitioner seeking *habeas corpus* relief may overcome the expiration of the AEDPA limitations period if the asserted claim qualifies under an exception to avoid a fundamental miscarriage of justice. *McQuiggin v Perkins*, 569 US 383, 392–94 (2013). Actual innocence serves as a gateway to bypass a procedural bar (such as the expiration of the statute of limitations) so that a constitutional claim may be heard. Id at 386, 392. But the standard is "demanding" and opens "only when a petition presents 'evidence of innocence so strong that a court cannot

7

have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" Id at 401, quoting *Schlup v Delo*, 513 US 298, 316 (1995); see also *Floyd v Vannoy*, 894 F3d 143, 154–55 (5th Cir 2018) (citations omitted).

*Actual innocence* in this context means "factual innocence, not mere legal insufficiency." *Bousley v United States*, 523 US 614, 623 (1998), citing *Sawyer v Whitley*, 505 US 333, 339 (1992); see also *Calderon v Thompson*, 523 US 538, 559 (1998), citing *Sawyer*, 505 US at 339. And a petitioner must support the allegations with new and reliable evidence that was not presented at trial, while establishing that it is "'more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Fairman v Anderson*, 188 F3d 635, 644 (5th Cir 1999), quoting *Schlup*, 513 US at 327; accord *Finley v Johnson*, 243 F3d 215, 221 (5th Cir 2001); *United States v Jones*, 172 F3d 381, 384 (5th Cir 1999) (citation omitted). The untimeliness of a petition itself bears "on the credibility of evidence proffered to show actual innocence." *McQuiggin*, 569 US at 401.

The Fifth Circuit recently observed that the Supreme Court hasn't yet "explicitly defined" what constitutes "new reliable evidence" under the *Schlup* actual-innocence standard. *Hancock v Davis*, 906 F3d 387, 389 (5th Cir 2018) (quotation omitted). And it has yet to weigh in on a circuit split concerning whether the new evidence must be "newly discovered, previously unavailable evidence, or, instead, evidence that was available but not presented at trial." Id at 389 & n 1 (collecting and comparing cases); see also *Fratta v Davis*, 889 F3d 225, 232 (5th Cir 2018), cert denied, —— US ——, 139 S Ct 803 (2019).

But it is clear that evidence "does not qualify as 'new' under the *Schlup* actual-innocence standard if 'it was always within the reach of [petitioner's] personal knowledge or reasonable investigation.'" *Hancock*, 906 F3d at 389, quoting *Moore v Quarterman*, 534 F3d 454, 465 (5th Cir 2008) (alteration in original). For instance, the petitioner in *Hancock* supported his claim of actual innocence with affidavits obtained close to the date of the murder from four state witnesses who testified at trial. Id at 388. But there was no assertion that those affidavits were

8

unavailable to counsel at the time of trial. Ibid. The Fifth Circuit thus found that they weren't *new* evidence that could support an assertion of actual innocence overcoming the limitations bar of § 2244(d)(1). 906 F3d at 390.

The Supreme Court also instructs the reviewing court to assess more than just the new evidence when considering an assertion of actual innocence:

> [T]he habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial. Based on this total record, the court must make a probabilistic determination about what reasonable, properly instructed jurors would do. The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors.

*House v Bell,* 547 US 518, 537–38 (2006) (internal citations and quotations omitted).

Granger waited over eleven years after his conviction became final to bring his federal petition. He contends that new evidence of actual innocence excuses application of the statute of limitations. He asserts that a witness named Clarence Craig would have testified that he shared a BB gun with Granger and that it never worked. Granger submits an affidavit by Craig that avers:

- o   He was very familiar with the BB gun that Granger had in his possession on February 16, 2003—the date that Granger robbed Cisneros;

- o   Several friends and Granger had possessed that BB gun for several weeks before the date of the robbery;

- o   Craig had handled that BB gun several times prior to and up to the date of the robbery;

- o   The BB gun was inoperable and wouldn't fire a BB or anything else on the date of the robbery; and

9

      o   He was available to testify and would have testified for the defense had he been asked.

Dkt 10-20 at 29.

Granger argues that this fits the *actual-innocence* exception to the AEDPA statute of limitations. Dkt 1 at 15. To the contrary, he fails to make a sufficient showing for three independent reasons. *First,* the affidavit isn't properly considered new evidence. *Second,* it isn't reliable. *Third,* it wouldn't alter the verdict.

*As to whether the affidavit constitutes new evidence.* Granger asserts that Craig's testimony regarding the inoperability of the gun "could not have been reasonably obtained prior to the date of the affidavit . . . ." Dkt 1 at 15. He provides nothing to support this bald assertion. And to the contrary, it is quite clear that the proffered testimony from Craig isn't *new* evidence within the meaning of an assertion of actual innocence.

For instance, Craig made similar assertions during the state hearing in June 2018. He testified that it was common knowledge among Granger's friends that the gun was inoperable. Dkt 10-19 at 47. And he testified that there was a group of ten or eleven young people that would play with the gun and knew it wasn't functional. Id at 41–42. Granger also testified at that hearing that the BB gun was never operable prior to and during the offense date and that it was like a toy. Id at 38, 52.

The substance of Craig's affidavit was at all times within the reach of Granger's personal knowledge or reasonable investigation. The affidavit itself asserts that Craig was available to testify at the time of trial. And any one of the ten or eleven friends that Granger played with in the apartment complex could have testified to this fact. Dkt 10-20 at 29.

The Court finds that Craig's affidavit isn't new evidence as it was clearly and substantially available at the time of trial.

*As to whether the affidavit constitutes reliable evidence.* The standard in *Schlup* demands credible, reliable, or otherwise trustworthy evidence to establish factual innocence. For instance, the Fifth Circuit found in *Williams v Thaler* that a petitioner failed to meet the *Schlup* standard when relying on an affidavit stating that another man claimed to be the killer, noting that the trial evidence

10

contradicted the new account. 602 F3d 291, 307–08 (5th Cir 2010). It likewise denied relief in *Foster v Thaler* upon finding that new exculpatory evidence wasn't reliable, stating, "One more contradictory story would not have compelled jurors to find [the petitioner] not guilty." 369 F Appx 598, 602 (5th Cir 2010).

Evidence at trial suggested that Granger used more than one air pistol or BB gun to commit offenses. State's Exhibit 43 was an air pistol or BB gun recovered in a 1998 Chevrolet Malibu that was taken at gunpoint by Granger from a woman named Linda Ledesma. Dkt 10-13 at 17, 23. State's Exhibit 6 was a different air pistol or BB gun that was recovered from the vehicle of Catherine Cisneros in the primary case. Dkt 10-11 at 25. Cisneros testified that she found the gun in between the seat and the console. Id at 33. And she testified that she saw Exhibit 6 when Granger pointed it in her face. Ibid.

Craig testified at the state hearing in June 2018 that he didn't know whether the gun he was talking about was the same gun used in Granger's crime. Dkt 10-19 at 48–49. And he couldn't definitively state that the BB gun Granger used on February 16, 2003 was the same BB gun that Craig knew to be inoperable. Ibid. The proffered testimony from Craig thus doesn't reliably establish the point asserted by Granger.

A number of findings by the state court also entirely undermine these present contentions by Granger:

> 5.  In addition to committing the aggravated robbery against Cisneros, the State presented evidence during the punishment phase that the applicant committed aggravated robbery against three other females by pointing a firearm or an air soft pistol at them and taking their vehicles (VI R.R. at 7, 35, 91). On at least one occasion, the applicant chose to sexually assault one of the women (VI R.R. at 48–56).
>
> . . .
>
> 8.  The trial court conducted an evidentiary hearing on June 18, 2018, where testimony was presented from Mr. Nunnery, the applicant, and an individual named Clarence Craig.

11

9. The Court finds that the testimony provided by Mr. Nunnery at the writ hearing was credible.

10. The Court finds that the testimony provided by the applicant at the writ hearing to be incredible.

11. The Court finds that the testimony provided by Clarence Craig at the writ hearing to be incredible.

12. The Court finds based, on the credible testimony of Mr. Nunnery, that due to the passage of time and due to the destruction of his file he does not have an independent recollection of his representation of the applicant (II R.R. - Writ Hearing at 8, 14, 18, 28).

. . .

17. The Court finds, based on the credible testimony of Mr. Nunnery, that he had no personal recollection of the name of Clarence Craig or ever seeing him prior to the writ hearing (II R.R. - Writ Hearing at 14).

18. The Court finds, based on the clerk's record, that Mr. Nunnery was appointed to represent the applicant on December 16, 2003; he filed a motion for investigative fees on January 29, 2004; and the applicant's trial occurred in March 2005 (I C.R. at 17–19, 135).

19. The Court finds, based on the credible testimony of Mr. Nunnery, that due to Mr. Nunnery's customary practice and due to the fact that he had the assistance of an investigator, that had the name of Clarence Craig ever been mentioned to himself or the investigator that Craig would have been interviewed (II R.R. - Writ Hearing at 14). Furthermore, it is reasonable to assume that because Craig was

not called as a witness to testify, that if Nunnery was in-fact aware of him, that Nunnery determined that Craig's testimony would not have been beneficial or necessary for the applicant's defense (II R.R. - Writ Hearing at 26).

20.  The Court finds, based on the reporter's record, that Clarence Craig and the applicant have known each other since Craig was 9 or 10 years old as they grew up in the same apartment complex (II R.R. - Writ Hearing at 30–31, 35).

21.  The Court finds, based on the reporter's record, that Craig was aware that the applicant was arrested for the primary charge "like a couple of weeks later" after the applicant's arrest in February 2003 (II R.R. - Writ Hearing at 31).

22.  The Court finds, based on the reporter's record, that at least 10 or 11 people would play with the same alleged BB gun at the apartment complex that the applicant and Craig lived at (II R.R. - Writ Hearing at 35–36).

23.  The Court finds, based on the reporter's record, that in addition to Clarence Craig the applicant was also friends with an individual named Michael Roberts who also lived at the same apartment complex.

24.  The Court finds, based on the trial reporter's record, on the same date that the applicant was committing the primary offense of aggravated robbery for taking the complainant's Toyota Sequoia he had taken a tan Lincoln Navigator. The owner of the tan Lincoln Navigator, Julissa Alanis, testified at trial, that she advised that she saw two black men in a white Honda vehicle before the applicant forced her into her vehicle at gunpoint

13

and ultimately took her vehicle (VI R.R. at 13–14).

25. The Court finds, based on the writ reporter's record that Mr. Roberts was driving a White Honda Civic on February 16, 2003 (II R.R. - Writ Hearing at 39). Craig was a passenger in the Honda Civic and they evaded from the police and Craig was arrested (II R.R. - Writ Hearing at 39).

26. The applicant admitted that Mr. Roberts assisted him in committing the primary offense that occurred on the same date but later in time to the aggravated robbery of the tan Lincoln Navigator (II R.R. - Writ Hearing at 53–54).

27. The Court finds, based on the reporter's record, that Craig has never looked or compared the BB gun that was admitted at trial to determine if it is the same BB gun that was allegedly played with by the applicant, Craig, and the 10 or 11 other individuals at the apartment complex (II R.R. - Writ Hearing at 42–43).

28. The Court finds, based on the reporter's record, that an air pistol or BB gun was also recovered in a 1998 Chevrolet Malibu that was taken at gunpoint from the complainant, Linda Ledesma, by the applicant (VI R.R. at 55, 79). This is a different air pistol or BB gun that was recovered from Catherine Cisneros' vehicle in the primary case (IV R.R. at 79–80, 109–111). Therefore, the applicant used more than one air pistol or BB gun to commit his multitude of offenses.

29. The Court finds that the applicant has offered no justifiable excused [*sic*] for his almost 11 year delay in seeking habeas relief.

14

30. The Court finds that the applicant's delay in pursuing habeas relief has affected the credibility of his claims.

31. The applicant fails to show that there is newly discovered evidence to support his claim of actual innocence. The Court finds, based upon the reporter's record, according to the applicant's own witness that there were allegedly 10 or 11 witnesses that could have testified as to the inoperability as to the BB gun.

Dkt 10-22 at 2–7.

These factual findings by the state court are presumed to be correct, and Granger bears the burden of rebutting that presumption by clear and convincing evidence. 28 USC § 2254(e)(1). Granger fails to meet that burden.

The delay by Granger in presenting this new testimony also factors into whether the proffered testimony from Craig is reliable. The Supreme Court in *McQuiggin* held that no threshold diligence requirement applies to actual-innocence claims, but delay is a factor in the evaluation of reliability. 569 US at 387 (citation omitted). To assess reliability, it is appropriate for a court to "consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability" of the proffered new evidence. *Schlup*, 513 US at 332. Granger states in his petition that he "lost contact with Craig." Dkt 1 at 15. He also testified at the state hearing that he had written letters while in the Harris County Jail but didn't try to contact Craig or the other ten or eleven friends in the apartment complex because he didn't know their apartment numbers. Dkt 10-19 at 57–58. Even so, this doesn't explain why it took him almost twelve years to present this evidence. Such an unexplained delay negatively impacts the weight of the proffered testimony from Craig. See *McQuiggin,* 569 US at 399.

The Fifth Circuit in *Fairman v Anderson* stated that examples of credible, reliable evidence of factual innocence identified in *Schlup* can include such items as "exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness

15

accounts, and certain physical evidence." 188 F3d 635, 644 (5th Cir 1999) (citations omitted). The information provided in the Craig affidavit in no way approaches this type of evidence. It is instead conclusory, self-serving, and contrary to certain factual findings by the state court. In short, Granger hasn't supported his claim of factual innocence with the necessary level of credible, reliable, or otherwise trustworthy evidence required by *Schlup.*

*As to whether the affidavit would alter the verdict.* The newly presented evidence submitted by Granger also doesn't demonstrate that it is more likely than not that no reasonable juror would have convicted him in light of that evidence. *Schlup,* 513 US at 327.

Granger raised the sufficiency of the evidence to support his conviction on appeal. The appellate court rejected the claim and overruled the point of error, stating:

> A conviction for aggravated robbery requires that the State prove that the defendant committed a robbery and either "causes serious bodily injury to another," or "uses or exhibits a deadly weapon." Tex. Pen. Code Ann. § 29.03(a)(1), (2). A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B) (Vernon Supp. 2005).

> Here, Officer S. McCoy testified that a BB gun can cause serious bodily injury. Accordingly, legally sufficient evidence supports the jury's finding that the BB gun was a deadly weapon. *See Adame v. State,* 69 S.W.3d 581, 582 (Tex. Crim. App. 2002) (holding that, "[w]ith testimony that a BB gun is capable of causing serious bodily injury, it is reasonable for a jury to make a deadly weapon finding").

*Granger,* 2006 WL 1223516 at *2.

16

Under Texas law, the government "is required to prove only the use of a deadly weapon; if its proof shows a firearm, it need not prove that it was operable." *Wright v State*, 582 SW2d 845, 847 (Tex Crim App 1979). For example, in *Walker v State*, the Texas Court of Criminal appeals held that a forty-five-caliber pistol without a firing pin or clip was a deadly weapon because it was "*manifestly designed* and *made* for the purpose of inflicting . . . *serious bodily injury* and that this fact was evident to the senses and understanding of the victim." 543 SW2d 634, 637 (Tex Crim App 1976) (emphasis in original). The point is the understanding of and effect upon the victim against whom the accused brandishes the weapon.

The case cited above by the First Court of Appeals in review of this action—*Adame v State*, 69 SW3d 581 (Tex Crim App 2002)—extends this to consideration on use of an airsoft or BB gun. Texas law establishes that an airsoft pistol is neither a firearm nor a deadly weapon *per se*. Id at 582. But that isn't the end of the inquiry. "With testimony that a BB gun is capable of causing serious bodily injury, it is reasonable for a jury to make a deadly weapon finding." Ibid. And the State isn't required to prove, for instance, that a pistol was loaded when it was used or exhibited during the commission of the robbery, only that it "was capable of causing serious bodily injury or death in its use or intended use." Ibid. Likewise, a jury may infer that a gun is loaded—and thus operable—under some circumstances, such as when a defendant in the midst of a convenience-store robbery "threatens serious bodily injury" to the store clerk "by pointing a BB gun at her." Ibid (citation omitted).

The jury trying Granger's case heard Cisneros testify that he pointed a gun inches from her face, demanded the keys to her vehicle, and took her backpack after a struggle. Dkt 10-11 at 29. An officer testified that he later saw Granger in Cisneros's vehicle. Dkt 10-11 at 16. Evidence established that Granger's fingerprint was found in her vehicle. Cisneros also testified that she later found a gun in the vehicle that didn't belong to her. And she identified it as the one Granger used

17

during the robbery. All of this connects Granger to the BB gun submitted as State's Exhibit 6.

The jury could also have reasonably inferred that the BB gun was loaded and operable based on Cisneros's testimony that she feared for her life when Granger approached her with what Cisneros reasonably believed to be a handgun and demanded the keys to her vehicle. See *Adame*, 69 SW3d at 582 (finding it "reasonable to infer that defendants use loaded guns to facilitate convenience store robberies"). Indeed, Dupre (the firearms examiner) testified that Exhibit 6 was a replica of existing firearms and capable of shooting six millimeter plastic BB's—and further, that when working, it fires the BB at 250 feet per second. Dkt 10-11 at 41. She also testified that the BB gun had been modified, making it hard from a few feet away to distinguish it from an actual nine-millimeter semiautomatic firearm. Ibid. Officer S. McCoy also testified that a BB gun can cause serious bodily injury. Id at 47.

The jury heard this evidence and apparently chose to credit it. And based on this evidence, the Court cannot find that it is more likely than not that no reasonable juror would have convicted Granger in light of the new evidence he seeks to present. To the extent that there was conflicting testimony regarding the functionality of the airsoft pistol or its capability to cause serious bodily injury, it was the province of the jury to resolve those conflicts. The jury's guilty verdict shows that they believed that the BB gun was a deadly weapon, regardless of whether it was working or not.

The Fifth Circuit holds, "The *Schlup* standard 'does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that *no reasonable juror* would have found the defendant guilty.'" *Bosley v Cain*, 409 F3d 657, 664 (5th Cir 2005), quoting *Schlup*, 513 US at 329 (emphasis added). The standard is a demanding one. "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 569 US at 401, quoting *Schlup*, 513 US at 316.

18

Granger has failed to meet his burden under *McQuiggin*.

> d.   Request for an evidentiary hearing

Granger seeks an evidentiary hearing to address his actual innocence claim. Dkt 11.

28 USC § 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The Supreme Court has stated that this reflects "Congress' intent to avoid unneeded evidentiary hearings" in federal *habeas corpus* proceedings. *Williams v Taylor*, 529 US 420, 436 (2000). No hearing is required "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief." *Schriro v Landrigan*, 550 US 465, 474 (2007). "If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require." Rule 8 of the Rules Governing Section 2254 Cases.

The reviewing court has discretion to reject the need for an evidentiary hearing. See *Conner v Quarterman*, 477 F3d 287, 293 (5th Cir 2007), citing *Roberts v Dretke*, 381 F3d 491, 497 (5th Cir 2004). On the one hand, a petitioner seeking a federal writ of *habeas corpus* can have an evidentiary hearing if there is a genuine factual dispute and the state hasn't yet afforded the petitioner a

"full and fair hearing." *Clark v Johnson*, 202 F3d 760, 766 (5th Cir 2000), quoting *Perillo v Johnson*, 79 F3d 441, 444 (5th Cir 1996). But on the other, a petitioner isn't entitled to an evidentiary hearing "if his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'" *Young v Herring*, 938 F2d 543, 560 (5th Cir 1991), quoting *Blackledge v Allison*, 431 US 63, 74 (1977); see also *Washington v Davis*, 715 F Appx 380, 385 (5th Cir 2017).

The above analysis shows that the statute of limitations plainly bars the § 2254 application brought by Granger. He also fails to show entitlement to equitable tolling. Those issues can be and were resolved based on the pleadings and state-court records. An evidentiary hearing is unnecessary where there are no relevant factual disputes that require development in order to assess the claims. *Robison v Johnson*, 151 F3d 256, 268–69 (5th Cir 1998), cert denied, 526 US 1100 (1999).

Granger provides no factual basis to support the need for an evidentiary hearing. The motion for such hearing is denied.

### 4.   Conclusion

The pleadings and state court records show that the federal petition for a writ of *habeas corpus* brought by Petitioner Allen James Granger is untimely.

The motion by Respondent Lorie Davis to dismiss based on limitations is GRANTED. Dkt 9.

The petition for a writ of *habeas corpus* is DENIED. Dkt 1.

The motion for evidentiary hearing is DENIED. Dkt 11.

Any other pending motions are DENIED as moot.

This case is DISMISSED WITH PREJUDICE.

SO ORDERED.

Signed on February 3, 2021, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge